67,312

In the Matter of the Marriage of AILEEN M. CRAY, *Appellant*, and THOMAS M. CRAY, *Appellee.*

(867 P.2d 291)

Opinion filed January 21, 1994.

*Stephen J. Blaylock,* of Woodard, Blaylock, Hernandez, Pilgreen & Roth, of Wichita, argued the cause and *Cindy L. Cleous,* of the same firm, was with him on the briefs for the appellant.

*Jake W. Brooks,* of Scott City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HOLMES, C.J.: This is an appeal and cross-appeal from various orders and judgments of the trial court in a dissolution of marriage proceeding. The petitioner in the divorce action, Aileen M. Cray, appealed from the district court's orders (1) selecting the date of the parties' separation as the valuation date of marital assets; (2) failing to award profits and/or losses upon certain pension plan assets; and (3) awarding child support. The respondent, Thomas M. Cray, cross-appealed from the court's orders regarding (1) maintenance; (2) assessment of certain litigation expenses; and (3) modification of his settlement proposal. The Court of Appeals affirmed the district court's orders and judgments in part and reversed in part, remanding the case with directions to the trial court to reweigh the evidence as to property division and maintenance using a different valuation date. *In re Marriage of Cray,* 18 Kan. App. 2d 15, 846 P.2d 944 (1993). Both parties filed petitions for review. We granted Aileen's petition for review on the issues of the selection of a valuation date for marital assets and whether profits and/or losses should have been allowed on her share of the pension plan assets. We denied the petition for review of Thomas. For the sake of clarity, the petitioner will be referred to as Aileen and the respondent as Thomas.

The parties were married August 19, 1970, in Davenport, Iowa. Although two children were born of the marriage, only Thomas Michael Cray, Jr., age 12, remained a minor at the time of trial of this action.

A review of the record reveals Aileen left the marital home and relationship on December 31, 1987. In August of 1988, she filed an action for separate maintenance, which was later amended to an action for divorce. That divorce action was voluntarily dismissed by Aileen in February 1990 because she was not ready for trial. Shortly thereafter, in April 1990, she filed the present

action for divorce, alleging grounds of incompatibility. K.S.A 60-1601(a)(1).

The divorce was bitterly contested by both sides, with over 1,000 items of property and debt, ranging from the trivial (silver dust cloth worth 10 cents) to the substantial (marital residence worth $87,000), being brought before the trial court for division. The custody of the minor child had previously been settled between the parties, with Aileen designated the residential parent in a joint custody arrangement. The parties contested the date of valuation of marital assets at trial, with the court finding from the trial testimony that the parties had essentially gone their separate ways from December 31, 1987, and that date was selected and used by the court in determining asset valuation.

The trial court declared the parties divorced as of November 20, 1990, at the end of the trial but took the issues regarding property and debt division under advisement. The trial court issued its memorandum decision on January 22, 1991, regarding the issues taken under advisement, set out the orders of the court, and directed Thomas' attorney to draft the journal entry. Thereafter, numerous motions were filed by the parties and ruled upon, with the final journal entry being filed on July 22, 1991. On October 9, 1991, motions by the parties for the trial court to reconsider, alter, or amend the judgment were denied.

The trial court in its memorandum decision cast more light on the history and unfortunate course of this unseemly divorce proceeding, stating:

"The parties to this action have presented to this Court a nearly impossible task of equitably dividing very nearly one thousand separate items of property and debt. Close to 120 items, substantial and inconsequential, are at issue as to possession and an untold number are at issue as to value. The Court has been called upon to determine such things as who is to get nine Large Round Crocheted Doilies and whether or not they are worth $5.00 or $7.00 or an average. Or, who gets the French Bread Basket and whether it is worth 50 cents or $1.00 or an average. Or, who gets a collection of cookbooks and whether they are worth nothing or $5.00. And on, and on, and on. From baby spoons, wedding gifts, and a bud vase worth 25 cents to a honey jar, cheese slicer, silver polishing cloth worth 10 cents, and a house worth $87,000.00.

"The Court has tried repeatedly to strike out on its own and strike an independent equitable balance, only to be stymied by the vast number and quantity of tasks in dividing up and assigning values with little or no evidence

bearing on value of items that range from the sublime to the ridiculous, and little or no definitive direction from the statutory and case law guidelines in this long term marriage of competing interests. This Court has never experienced a dissolution of marriage so trivialized and drowned in the division of property. It is apparent from the evidence that thousands of dollars have been spent for attorney fees on a vast array of items that would bring only several hundred dollars all together on the open market if sale were ordered by the Court.

"With the only other option available to the Court being the forced sale of ALL property and the division of the pittance to be derived, the Court will adopt, with modification discussed infra, the comprehensive division proposed by the Respondent in Respondent's Exhibit 5. This was the most complete and comprehensive plan submitted. And the disparity of values given are not great when considering the type of property involved.

"This marriage, essentially, was at an end with the separation of the parties in December of 1987. There were several attempts at reconciliation of short duration that were obviously to no avail. The Petitioner first filed for separate maintenance in August of 1988. This was subsequently converted into a divorce case. In February of 1990, within days of a scheduled trial, the Petitioner dismissed the case. It was refiled in April of 1990. The whole thing started all over again and even now the Petitioner contends that she would rather not get a divorce. This recitation of the history of the case is important in that there is an issue as to the date of valuation of various accounts. It is the Court's decision that the parties essentially went their separate ways in the accumulation of their estates on the date of separation, December 31, 1987, and that will be the date of valuation. It also follows that items acquired by the respective parties subsequent to that date are their separate properties."

Aileen has designated two issues in her petition for review, which she states as follows:

"I. In addition to the valuation date of marital property being that of the date of filing which results in a divorce, can a trial court consider the valuation date of marital property up to the date of the decree?

"II. Can a trial court order that profits and losses on the non-participant spouse's share of a pension plan under a qualified domestic relations order begin with the date of valuation of the pension plan rather than the date the order is qualified and the participant spouse is entitled to benefits?"

This court granted Aileen's petition for review because of an obvious conflict as to the appropriate date of valuation of marital assets between the opinion of the Court of Appeals panel in the present case and the decision of a different panel of that court in *In re Marriage of Schwien,* 17 Kan. App. 2d 498, 839 P.2d 541 (1992). In *Schwien,* the Court of Appeals, in a well-reasoned

opinion, determined that the date of valuation should be left to the sound discretion of the trial court based upon the facts and circumstances of the particular case. In the present case, the Court of Appeals panel disapproved the holding in *Schwien* and, instead, adopted a bright-line rule that the date of the filing of the petition is the only proper valuation date. *Cray*, 18 Kan. App. 2d 15, Syl. ¶ 1. Therefore, a more accurate statement of the issue now before the court is: Did the Court of Appeals err in determining that marital assets must be valued as of the date of the filing of the petition which ends in the granting of a divorce? We conclude that it did.

Aileen maintained in the Court of Appeals that the trial court's order adopting the date of separation as the date to value marital assets was erroneous and contrary to state law. Aileen relied primarily on *Cady v. Cady*, 224 Kan. 339, 581 P.2d 358 (1978), and K.S.A. 23-201(b) in asserting that the date of the filing of the petition is the earliest date for valuation of the marital assets in a dissolution of marriage action. She contends the trial court should have limited discretion to adopt a valuation date as of the date of the filing of the petition or thereafter. She argues that the date may never be earlier than the date of filing the petition, but may in the court's discretion be subsequent thereto.

Thomas, on the other hand, points out that no Kansas case law fixes an absolute date and that none is required by Kansas statute. He argued in the Court of Appeals and before this court that the legislature has given broad discretion to the trial court in K.S.A. 1992 Supp. 60-1610(b) to determine the appropriate date of valuation. He contends that *Schwien* sets forth the correct rule and that the ruling from *Schwien* should be adopted by this court.

K.S.A. 23-201(b), relied upon by Aileen, provides:

"(b) All property owned by married persons, including the present value of any vested or unvested military retirement pay, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest

to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."

K.S.A. 1992 Supp. 60-1610(b), relied upon by Thomas, provides in pertinent part:

"In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; *and such other factors as the court considers necessary to make a just and reasonable division of property."* (Emphasis added.)

In rejecting the trial court's decision to value the marital assets as of the date of the parties' separation, the Court of Appeals' primary reliance was upon the statutory language of K.S.A. 23-201(b). In doing so, the court reasoned:

"In the case before us, the only court proceeding which ended in a journal entry of divorce was the action filed by Aileen in April of 1990. Accordingly, that date fixed the extent of the marital property of the parties. It would be illogical to then value the property at a time other than when it became marital property, as that would be tantamount to altering the extent of the marital property as defined by statute." 18 Kan. App. 2d at 19.

Next, the court addressed certain concerns which were considered in arriving at the court's decision to fix an absolute date to value marital assets in all divorce actions. In doing so, the court stated:

"Notwithstanding that logic dictates valuation should be determined on or as close as practical to the date the extent of the marital property is determined, the trial court may still consider any factor, including such things as length of separation, diminution of value, unnecessary delay, or any number of other factors, specifically listed or not, that, in the trial court's discretion, are necessary to consider in making a division of property pursuant to K.S.A. 1991 Supp. 60-1610(b)." 18 Kan. App. 2d at 19.

Finally, in concluding that an absolute and fixed date of valuation of marital assets was consistent with both Kansas case law and statutory law, the court rationalized:

"[F]ixing a valuation date does not prevent the trial court from taking into consideration changes in value from that date, if circumstances warrant this, in determining what, in a given case, would be a just and reasonable division of property. On the other hand, fixing a valuation date would lead to more consistency among trial courts in determining value from case to case while

at the same time leaving them with discretion to make just and reasonable property divisions." 18 Kan. App. 2d at 19-20.

In reversing the trial court's order which set the time of separation of the parties as the valuation date of marital assets, the Court of Appeals panel disapproved the recent ruling in *Schwien,* wherein a different panel of the Court of Appeals held:

"The trial court has discretion to value the marital estate at the time of separation, at the time the divorce petition is filed, at the time of the divorce hearing, or as the facts in each case dictate. When the time of valuation becomes an issue in a contested case, the trial court at the pretrial conference should set the valuation date." 17 Kan. App. 2d 498, Syl. ¶ 3.

Following its discussion of *Schwien,* the Court of Appeals panel here concluded:

"We decline to apply the holding of the Court of Appeals panel in *Schwien,* 17 Kan. App. 2d 498, Syl.¶ 3 . Under the facts of this case, we hold the trial court should use the date of the filing of the divorce petition as the date for valuing marital property, with the discretion to consider the length of the parties' separation in dividing that marital property." 18 Kan. App. 2d at 18.

Thus, the Court of Appeals panel apparently adopted a rule allowing the trial court to do indirectly what the panel refused to allow be done directly. In its syllabus of its ruling, the panel expanded its holding beyond the facts of this case and held:

"In a divorce action, the correct date for the valuation of marital property for purposes of property division is the date of the filing of the action which results in the granting of the divorce. Holdings to the contrary in *In re Marriage of Schwien,* 17 Kan. App. 2d 498, Syl. ¶ 3, 839 P.2d 541 (1992), are disapproved." 18 Kan. App. 2d 15, Syl. ¶ 1.

While conflicting opinions among panels of the Court of Appeals occur occasionally and constitute a valid ground for granting Supreme Court review, K.S.A. 20-3018(b), we know of no authority for one panel of the Court of Appeals to disapprove or overrule a decision of another panel of the same court. Any such action should be done, at a minimum, by an en banc review and decision of the Court of Appeals.

In *Schwien,* the trial court used three different dates of valuation to determine the value of various marital assets. The parties, however, were not satisfied with the court's division of their marital property and appealed the decision to the Court of Ap-

peals. In reversing the trial court's ruling, the Court of Appeals directed the trial court to determine and use a common valuation date. In doing so, the Court of Appeals noted that no Kansas case or statute fixed an absolute date upon which marital assets must be valued, and it declined to do so. After reviewing cases from other jurisdictions which have adopted various and sundry valuation dates, the *Schwien* court determined that the trial court should have broad discretion to adopt a valuation date that is most appropriate under the facts and circumstances of the particular case in order to comply with the statutory mandate "to make a just and reasonable division of property." K.S.A. 1992 Supp. 60-1610(b).

We granted Aileen's petition for review to resolve the conflict between *Schwien* and the Court of Appeals decision in this case. This court has not previously addressed the issue of the proper date for valuation of marital assets in a divorce, separate maintenance, or annulment proceeding. The issue now before this court is whether the court should adopt a fixed or absolute date upon which marital assets will be valued in all divorce actions, and if so what date should be selected.

In addition to its reliance upon K.S.A. 23-201(b), the Court of Appeals in the present case relied heavily upon our decision in *Cady*, 224 Kan. 339. The reliance of the court on K.S.A. 23-201(b) and *Cady* is misplaced. A plain reading of the language of both K.S.A. 23-201(b) and K.S.A. 1992 Supp. 60-1610(b) indicates the legislature did not set a fixed or absolute date to value marital assets. In *Cady*, which preceded the adoption of K.S.A. 23-201(b), the issue was "whether a spouse has a species of common or co-ownership in property held in the name of the other spouse before a judgment in a divorce action divides the property." 224 Kan. 339. In deciding the issue, the court stated:

"We hold that the filing of a petition for divorce or separate maintenance creates a species of common or co-ownership in one spouse in the jointly acquired property held by the other, the extent of which is determined by the trial court pursuant to K.S.A. 1972 Supp. 60-1610(b)." 224 Kan. at 344.

Nothing in K.S.A. 23-201(b) or *Cady* mandates a specific valuation date as of the time of the filing of the petition as argued by Aileen and decided by the Court of Appeals in this case. The statute merely creates a specific date or time when the property

owned by both parties to a marriage becomes "marital property" with a common ownership. It in no way requires that the property be valued as of the same time that the common ownership vests. The specific duty of the trial court is found in K.S.A. 1992 Supp. 60-1610(b), which directs the court "to make a just and reasonable division of the property" after considering all of the relevant factors and circumstances of the particular case. While the date of filing the action may be the logical and appropriate date for valuation of the marital assets in many, if not most, cases, nothing in the statutes require the use of such date.

A review of case law from other jurisdictions on this issue illustrates the wide divergence in opinion which exists regarding the time to value marital assets pursuant to a divorce. The various time periods include: date of separation, filing of divorce, after discovery, date of trial, date of divorce decree, date of distribution, and at the discretion of the trial court. Accordingly, there are numerous cases adopting widely divergent views of the appropriate time to value marital assets pursuant to a divorce.

Cases supporting the date of separation include: *Hunt v. Hunt*, 698 P.2d 1168 (Alaska 1985); *Savides v. Savides*, 400 Mass. 250, 508 N.E.2d 617 (1987); *Swindell v. Lewis*, 82 N.C. App. 423, 346 S.E.2d 237 (1986); the date of filing for divorce: *Jolis v. Jolis*, 111 Misc. 2d 965, 446 N.Y.S.2d 138 (1981); the date of the trial: *Taylor v. Taylor*, 736 S.W. 2d 388 (Mo. 1987); *Briceno v. Briceno*, 566 A.2d 397 (R.I. 1989); the date of dissolution: *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 486 N.E.2d 267 (1985); *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439 (1979); *In re Marriage of Brandt v. Brandt*, 145 Wis.2d 394, 427 N.W.2d 126 (1988); and the date of property distribution: *Grandovic v. Grandovic*, 387 Pa. Super. 619, 564 A.2d 960 (1989); *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988).

However, our research discloses that the greater number of jurisdictions follow the rule stated in *Schwien* and allow the trial court broad discretion to value marital assets at different times depending upon the facts of the individual case. Some examples include: *Bachtle v. Bachtle*, 494 A.2d 1253 (Del. Super. 1985); *Taylor v. Taylor*, 436 N.E.2d 56 (Ind. 1982); *Thompson v. Thompson*, 189 Mich. App. 197, 472 N.W.2d 51 (1991); *In re Marriage of Halvorson*, 230 Mont. 226, 749 P.2d 518 (1988);

*Hillebrand v. Hillebrand,* 130 N.H. 520, 546 A.2d 1047 (1988); *Bednar v. Bednar,* 193 N.J. Super. 330, 474 A.2d 17 (1984); *Wallace v. Wallace,* 733 S.W.2d 102 (Tenn. App. 1987); *Mitchell v. Mitchell,* 4 Va. App. 113, 355 S.E.2d 18 (1987).

In addition to the case law from numerous jurisdictions supporting the discretionary rule stated in *Schwien,* several leading secondary authorities also recommend this rule of law. Golden, Equitable Distribution of Property § 7.01, p. 251 (Turner 1992 Supp.) states: "A growing number of courts are refusing to establish any one mandatory date of valuation. These courts recognize that different dates should control in different cases and they leave the decision to the trial court's discretion."

Further discussion on this issue can be found in Goldberg, Valuation of Divorce Assets § 1.10, p. 15 (1984), which states: "[T]he most ideal approach employed by the courts to solve the problem of when assets should be valued holds that the trial court must be permitted to utilize alternative valuation dates in order to make truly equitable awards consistent with legitimate expectations of the parties."

In 27B C.J.S., Divorce § 545, we find:

"Under some statutes, marital property must be valued as of the date of divorce or dissolution of marriage, or date of separation, or as of the date of the decree, or as of the date of the hearing on disposition of the property if such hearing precedes the date of the decree. Generally, however, in the absence of statutory provisions to the contrary, no single event in the dissolution process necessarily establishes the time for proper valuation of property, especially the time for proper evaluation of marital assets which fluctuate in value, whether it be the date of filing, the date of trial, or the date of dissolution or divorce itself; and the time for valuation is a matter for the trial court to determine in the exercise of its discretion.

*"Thus, equitable factors may dictate a valuation date, and in order to do equity in dividing property in a divorce case, the trial court must be permitted to utilize alternative valuation dates, where reasonable under the facts and circumstances presented in the particular case, in order to make truly equitable awards consistent with the legitimate expectations of the parties."* (Emphasis added.)

We recognize that there are numerous factual situations which might warrant valuing the assets at a time other than the date of the filing of the divorce action. Some of those situations include: post-separation changes in value due to the efforts of one party; a lack of financial involvement of one party; purposeful dissipation

of assets subsequent to separation; and bad faith efforts to delay a divorce proceeding. However, we also recognize that mere passage of time between separation and divorce may not warrant valuation at the time of separation. We are also sensitive to and encourage legitimate efforts by either party to reconcile differences after a separation in attempts. to save the marriage. Thus, we expect that trial courts will give full consideration to such efforts in determining what date is appropriate for valuation of the assets.

We are not convinced that it is appropriate, let alone prudent, to tie the hands of the trial courts in their efforts to comply with the statute and make a just and reasonable division of property. Each divorce case is different, and we believe the longstanding rule which affords the trial court broad discretion in determining the date to value marital assets is the appropriate one. This court has recognized on numerous occasions the importance in allowing a trial court broad discretion in determining what is just and reasonable in the division of marital property. The breadth of this discretion was recognized in *LaRue v. LaRue*, 216 Kan. 242, 250, 531 P.2d 84 (1975), where the court stated: "Nowhere in any of our decisions is it suggested that a division of all the property of the parties must be an equal division in order to be just and reasonable." The legislature has left this discretion to the trial courts, and if there is to be a change in that discretion then it is a matter for the legislature. In conclusion, we agree with the reasoning put forth in *Berish v. Berish*, 69 Ohio St. 2d 318, 432 N.E.2d 183 (1982), supporting this rule. The pertinent portion of that opinion states:

"The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. The public policy giving rise to equitable distribution is at least in part an acknowledgment that marriage is a shared enterprise or joint undertaking. While marriage is literally a partnership, it is a partnership in which the contributions and equities of the partners do differ from individual case to individual case. Assets acquired by the joint efforts of the parties should be, on termination, eligible for distribution. But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review." 69 Ohio St. 2d at 319-20.

Accordingly, we overrule syllabus ¶ 1 and the corresponding statement in the Court of Appeals opinion of *In re Marriage of Cray*, 18 Kan. App. 2d 15, 846 P.2d 944 (1993). In lieu thereof we agree with the language of syllabus ¶ 3 in the Court of Appeals opinion of *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 839 P.2d 541 (1992). The trial court has discretion to value the marital assets at the time of separation, at the time the divorce petition is filed, at the time of the divorce hearing, or as the facts in each case dictate. When the time of valuation becomes an issue in a contested case, the trial court at the pretrial conference should set the valuation date. In doing so, all the marital assets shall be valued as of the same date.

The panel of the Court of Appeals, in its decision here, also appears to modify or disapprove certain language in *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 769 P.2d 678 (1989). The modification or disapproval of language from Harrison was inappropriate in view of our holding here.

Having determined that the selection of the appropriate date for valuation of marital assets is discretionary with the trial court based upon all the facts and circumstances of the particular case, we now turn to whether the selection of December 31, 1987, the date of separation of these parties, constituted an abuse of the trial court's discretion. The standard of review in determining an abuse of discretion has been stated many times. In *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973), we said:

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds."

The facts of this case were set forth earlier in some detail. During the time period from December 1987 to the time of trial in the present action, Aileen by her own admission had only spent 12 to 13 days in the marital residence, that being in May of 1988. Her testimony indicated she had been self-sufficient and financially independent from the original date of separation in

December 1987; she found a place to stay, held two part-time jobs at first, then obtained full-time employment as the director of the Finney County United Way. Her testimony revealed that during the time she allegedly was trying to reconcile with Thomas, she filed an action for separate maintenance, which she later amended to an action for divorce. She made no claim that she was trying to reconcile after filing the second divorce action shortly after dismissing the first action.

Both parties had divided their savings accounts prior to trial, with Aileen having her own account containing $6,672.64. Aileen admitted she did not make any contributions to, payments on, or create any marital assets after the separation date of December 31, 1987.

The trial court found that "this marriage, essentially, was at an end with the separation of the parties in December 1987" and that "the parties essentially went their separate ways in the accumulation of their estates on the date of separation, December 31, 1987."

The record discloses substantial competent evidence to support the trial court's decision to use the date of separation as the appropriate date for valuation of the marital assets. No abuse of discretion in adopting that date has been shown, and the trial court did not abuse its discretion.

Aileen in her petition for review states the second issue for consideration by this court to be:

"Can a trial court order that profits and losses on the non-participant spouse's share of a pension plan under a qualified domestic relations order begin with the date of valuation of the pension plan rather than the date the order is qualified and the participant spouse is entitled to benefits?"

While the simple answer to the question posed would be "yes," Aileen has again phrased the issue far more broadly than necessary to resolve the issues in this case. She then uses that statement of the issue to request a broad definitive opinion on the requirements of the various federal statutes as they apply to the preparation and subsequent approval of a qualified domestic relations order (QDRO) in a Kansas divorce proceeding. While we appreciate counsel's concern, we do not deem it appropriate, necessary, or advisable to use this case as a vehicle to direct

Kansas legal practitioners and judges on the federal law as it applies to a QDRO.

The trial court in its journal entry and decree of divorce filed July 22, 1991, divided the specific property of the parties to this divorce action and in addition ordered:

"The total value of the property being received by Respondent as described above after being reduced by joint debts assumed and paid by Respondent is somewhat larger than the property being set aside to the Petitioner, thereby Respondent shall convey further consideration to Petitioner by entering into a QDRO setting aside the sum of $21,059.77 from the 401K plan held individually by Respondent with Kansas Nebraska [the respondent's former employer]."

Following the filing of the journal entry, the parties filed "various and sundry motions [for the Court] to essentially reconsider the entire decision of the court." Following argument on the various and sundry motions, the trial court took the matter under advisement and subsequently denied all motions of both parties.

Aileen in her arguments before the trial court and the Court of Appeals asserted that her $21,059.77 share of the 401K plan should be subject to the gains and/or losses thereon from the date of valuation until the property is set aside by the plan administrator for ultimate distribution to her as provided by the plan, the applicable federal law, and the QDRO. Aileen does not contend that federal law requires that her share of the pension benefits be subject to gains and/or losses or to a reasonable rate of interest. Thus, we view the issue before the Court of Appeals and this court as whether the trial court abused its discretion in not specifically providing for gains and/or losses on the share of the plan designated for Aileen's benefit.

As a part of Aileen's petition and argument on review, she also asks that she be designated as the surviving spouse of Thomas until distribution of her share of the 401K funds. Additionally, she argues that syllabus ¶ 3 of the Court of Appeals opinion is an incorrect, or at least incomplete, statement of the law it attempts to set forth. The Court of Appeals made a heroic effort to review the federal statutes relating to the preparation, approval, and adoption of a QDRO in an attempt to provide specific guidelines to trial practitioners and judges.

The federal statutes as they apply to state divorce practice and the adoption of a QDRO are extremely complex, detailed, and difficult to reconcile. A valid QDRO must meet the comprehensive requirements of at least three federal acts, as amended: the Internal Revenue Code, the Employee Retirement Income Security Act of 1974, and the Retirement Equity Act of 1984. For those interested in the intricacies and scope of the various federal acts as they pertain to a QDRO, we recommend the recent treatise Snyder, Financial Issues in Divorce, Qualified Domestic Relations Orders (1993); 3 Troyan, Poll, Cantwell, and Weston, Valuation & Distribution of Marital Property (1993); and, to a more limited extent, 1 Elrod, Kansas Family Law Handbook § 10.043 (1990).

The Court of Appeals in syllabus ¶ 3 of its opinion in this case held:

"When the trial court in a divorce action directs the entry of a qualified domestic relations order awarding a portion of the employee spouse's pension funds to the nonemployee spouse, the nonemployee spouse does not have a right to those funds until two thresholds are met. First, the time for payment of the funds to the employee spouse must accrue, and, second, the funds must be segregated while the issue of the validity of the qualified domestic relations order is being determined by the pension plan administrator. *Until both requirements are met, neither the apportioned pension funds nor the profits and losses flowing therefrom are the property of the nonemployee spouse.*" 18 Kan. App. 2d 15. (Emphasis added.)

Aileen apparently interprets the emphasized statement as precluding any allowance of gains and/or losses or interest in a QDRO. Unfortunately, as pointed out by Aileen before this court, the broad holding of the Court of Appeals fails to recognize one or more exceptions to the rule as stated. The Retirement Equity Act allows for an earlier distribution to a divorced spouse if authorized in the plan and if consented to by the plan's administrator. Also, to the extent that the Court of Appeals holding might be construed to preclude in a QDRO a provision for gains and/or losses from the date of valuation, the language is overly broad. Therefore, we disapprove syllabus ¶ 3 and the corresponding portion of the opinion of the Court of Appeals.

Aileen also argues that she should be designated a surviving spouse in the QDRO. This issue was adequately handled by the Court of Appeals in syllabus ¶ 4, wherein the court stated:

"When in a divorce action a trial court awards a nonemployee spouse a portion of the other spouse's pension benefits by directing the entry of a qualified domestic relations order, it is not error for the trial court to refuse to direct that the nonemployee spouse be named as the 'surviving spouse.' As a cautionary measure, to provide guidance to the pension plan administrator, it is recommended the trial court set out in its proposed qualified domestic relations order that the nonemployee spouse be treated as the surviving spouse pursuant to the provisions of 26 U.S.C. § 414(p)(5) (1988) up to the amounts designated in the qualified domestic relations order." 18 Kan. App. 2d 15.

Unfortunately, in the present case the record does not reflect whether a proposed domestic relations order was prepared for consideration by the trial court or the plan administrator. If one was prepared it has not been included in the record on appeal.

We now turn to the real issue before the court. Did the trial court abuse its discretion in not granting Aileen gains and/or losses on the share of the 401K plan ordered set over to her as a part of the property division? We have previously determined that the selection of a valuation date rests in the sound discretion of the trial court under the facts and circumstances before the court and that the selection of the prefiling separation date in the present case does not constitute an abuse of discretion. It has now been more than six years since the valuation date adopted by the trial court. Much of the delay has been caused by the failure of both parties to exhibit any meaningful attempt to settle their differences. Further delay was precipitated by the failure of Aileen to be ready for trial and her dismissal of and subsequent refiling of the original action. In addition, the case is complicated by the fact that we are being asked to rule upon ramifications of a domestic relations order that, if prepared, has not been made a part of the record. It is unfortunate that the parties do not have the maturity and desire to settle their property differences. Their bitter and vindictive approach to this divorce has worked only to their own detriment and that of their children. There is no reason why the property issues in this divorce could not have been resolved years ago if the parties had the inclination to do so.

In our discussion of the first issue, we set forth the standard of review when it is asserted that a trial court has abused its discretion. Based upon the record in this case we cannot say that

at the time of trial the trial judge abused his discretion. However, as this case must be remanded to the district court for the preparation and approval of a proposed QDRO, and due to the long lapse in time, we direct the trial court in the interests of justice to review Aileen's share of the 401K plan and provide that the original amount be subject to gains and/or losses or to a reasonable rate of interest thereon in accordance with applicable federal statutes and the provisions of the 401K plan. K.S.A. 1992 Supp. 60-2101(b).

In conclusion we hold:

1. Syllabus ¶ 1 of the Court of Appeals decision and the corresponding portion of the opinion are reversed.

2. Syllabus ¶ 3 of the opinion in *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 839 P.2d 541 (1992), as more fully explained in the opinion is determined to be the rule of law on the issue of selection of a valuation date for marital property in a divorce, separate maintenance, or annulment action.

3. The Court of Appeals is reversed on the issue of the selection of the valuation date for the marital property herein, and the district court is affirmed.

4. Syllabus ¶ 3 of the Court of Appeals decision and the corresponding portions of the opinion relating to the threshold conditions of a qualified domestic relations order are disapproved.

5. Other issues in the Court of Appeals decision affirming the district court are not before this court for review.

6. The case is remanded to the district court for preparation of a proposed QDRO and the inclusion of gains and/or losses or a reasonable rate of interest on the portion of the 401K plan awarded to Aileen.

The judgment of the Court of Appeals is reversed in part and disapproved in part. The judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings.

DAVIS, J., not participating.

MILLER, C.J. Retired, assigned.