NOT DESIGNATED FOR PUBLICATION

No. 122,204

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF PAMELA LUCAS,
*Appellee*,

and

JAMES LUCAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed March 19, 2021.
Affirmed.

*James Lucas*, appellant pro se.

*Ellen S. Goldman*, of Overland Park, for appellee.

Before HILL, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM: In this divorce case, the district court denied James Lucas' motion to set aside the settlement agreement he had reached with Pamela Lucas. Without the assistance of counsel, James appeals. He suggests that the court made up facts, omitted crucial facts, and abused its discretion in several ways and asks us to overturn the court's ruling. We are hampered in our evaluation of his arguments by James failing to cite points in the record to support his arguments and by not submitting transcripts of pertinent hearings. Given these deficiencies, we hold that James has failed to meet his

1

burden of persuasion and is not entitled to relief on any of his claims. Having shown us no abuse of discretion, we affirm.

*Background*

Pamela and James married in 1971. James earned a PhD and founded two companies: Luman Consultants International, a consulting firm for healthcare and other organizations, and Epic Medical Concepts & Innovations, a medical device company. The two lived in their home in Prairie Village. We will call that property the Rosewood home. In 2006, he became Chairman of the Board and CEO of Dadson Manufacturing Corporation. Some time later, James began a romantic relationship with Maryl Janson. In 2011, James bought a home in Olathe that is known as the Sagebrush home. It is solely in James' name. He also started to deposit his earnings into a checking account with Janson.

In January 2017, Pamela filed for divorce. Right after she filed, a business dispute arose. James sued Pamela along with Nancy Peterson, the Nancy F. Peterson Trust, and Dadson for breach of contract and other claims. At that point James was President and CEO of Dadson until he was fired in January 2017. The Trust owned Dadson and Pamela served as one of the trustees. At the parties' request, the court delayed the divorce case pending the completion of the Dadson litigation. This is pertinent because of a later ruling made in the divorce case about the legal fees paid by Pamela during this breach of contract action.

Ultimately, the business litigation ended when the court dismissed all of the claims against Pamela in the Dadson case. The jury returned a verdict for James against Dadson for some deferred compensation, but found for Dadson on its counterclaims against James for conversion of funds and breach of fiduciary duty. The jury also assessed punitive damages against James.

Following the Dadson verdict, the divorce case came back to life when James asked for maintenance and Pamela asked the court to set a valuation date for valuing all of the marital property. At the hearing on those motions, the court denied James' motion for maintenance and set the valuation date at January 3, 2017—the date the petition for divorce was filed.

In March 2019, the parties agreed to settle the divorce case. They described it as a "walk-away" settlement. At the hearing, the agreement was summarized on the record as:

> "The divorce is resolved with each party keeping their own houses and being responsible for their own debts. Each party will keep all assets in their individual possessions, and each party will accept the debts that they have incurred and holding the other party harmless in the event that debt is not paid."

Later, James moved to set aside the settlement agreement. At the hearing on this motion, the court found the parties had entered into an enforceable settlement agreement and scheduled an evidentiary hearing to determine whether the settlement was fair and equitable. The court ordered the parties to create a simple spreadsheet of their property with values, based on evidence they would present at the hearing.

In early June 2019, the court heard testimony on the agreement. It also received a large exhibit book from Pamela. In August 2019, the court filed a journal entry where it made findings of fact about the value of each piece of property. In summary, the court ruled the settlement agreement was just and equitable. It granted the parties a decree of divorce and divided their property according to the settlement agreement, which it incorporated into the decree.

Later, James moved for sanctions against Pamela and her attorney for perjury. The court held a hearing and decided there had been no perjury by Pamela or her attorney, and instead sanctioned James $1,755.

James has included no hearing transcripts in the appellate record for this court to review.

*We must decide whether this appeal is timely.*

The district court filed its final judgment on August 16, 2019, granting a decree of divorce and dividing the marital property. James did not file his notice of appeal until October 29, 2019, which was beyond the 30-day limit set in K.S.A. 2020 Supp. 60-2103(a). Our motions panel ordered the parties to show cause why the appeal should not be dismissed for lack of jurisdiction.

James argued for our retention of the appeal and Pamela argued for its dismissal. The motions panel chose to retain the appeal without ruling on the question of jurisdiction. That is left for us to decide.

We find that we have jurisdiction of this appeal as a matter of fundamental fairness. James argued in his response to the show cause order that he received an email from the district court's administrative assistant apologizing for not sending him the journal entry. That email is not in the record. But Pamela attached a copy of the email to her response to the show cause order. While its attachment does not make the email part of the record on appeal, we view it as an admission by Pamela about the content of that email, so we will consider it.

After James emailed the administrative assistant on October 24, 2019, she responded on October 28, 2019.

4

"I must apologize that I did not send Mr. Lucas a filed stamped copy of the Court's Journal Entry, Doc. 50. I just assumed that since documents filed by Mr. Lucas contained his e-mail address, that he received e-filing notifications so I do apologize for not mailing a copy of this to Mr. Lucas. However, the proper procedure is that Mr. Lucas should have filed an Entry of Appearance indicating he is pro se. The clerk's office at that point would have added on his e-mail address."

Given the admission by the court's administrative assistant that she did not send the journal entry to James and the fact that the district court was unwilling to deny James' motion for sanctions as untimely based on James' contention that he did not learn of the court's judgment until mid-October, a remand for further fact-finding is unnecessary in this case. We hold that James' notice of appeal was timely because the district court did not serve him notice of the judgment until sometime in October. We will proceed with the appeal.

*We begin with the district court's findings of fact.*

James contends the district court "created" facts "contrary to the evidence" or found facts based on "no evidence whatsoever." But he has failed to include a transcript of the evidentiary hearing in the record on appeal. This is significant. In its journal entry, the court explicitly stated that it was relying on the evidence and testimony presented at the hearing on June 6, 2019, along with the other information on file.

We cannot find that the district court "created" facts without knowing what evidence was presented at the hearing. The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). James has failed to meet this burden. He has not designated a record that affirmatively establishes error. We are guided by *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010), where the court held that the failure to include

exhibits relevant to a district court's property division in the record on appeal precluded this court's review.

Compounding this error, James asserts facts that are not keyed to the record on appeal. This court may presume that a factual statement made without reference to a volume and page number of the record has no support in the record on appeal. Supreme Court Rule 6.02(a)(4) (2020 Kan. S. Ct. R. 34). We are duty bound to follow this rule and we therefore presume that any factual statement James makes without reference to volume and page has no support in this record.

In Kansas, when divorcing parties have made a settlement agreement "which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree." K.S.A. 2020 Supp. 23-2712(a). Under this statute, the district court must make two determinations. First, the agreement must be a valid contract. This involves traditional contract requirements, such as a lack of fraud and public policy considerations. Second, the agreement must be just and equitable. Here, the court must decide whether the terms provide an acceptable or fair property division under the circumstances. *In re Marriage of Traster*, 301 Kan. 88, Syl. ¶ 5, 339 P.3d 778 (2014). Generally, a division of property must be just and reasonable but need not be equal. *Traster*, 301 Kan. at 111. The district court is given broad discretion to determine whether a separation agreement is just and equitable. When a party challenges the district court's finding that a separation agreement is just and equitable, appellate review is limited to determining whether the district court abused its discretion in making that finding. *Traster*, 301 Kan. at 109.

The court here made both of these statutory determinations. First, it held this settlement was an enforceable contract. And it found no undue coercion or duress. James is not appealing that finding. Next, the court went on to hold that the parties' settlement was fair and just. To us, James argues to the contrary:  the agreement is not fair and just.

6

James contends the court erred in its findings of facts in several ways:

1.      James' travel and income

The district court found that James generated significant income in consulting and speaking. Since the date of the divorce filing, he has travelled to England, Ireland, and South Africa while generating speaking and consulting fees of $25,000. James contends the court made up this fact; that he has made no overseas trips since 2012. But he cites only to his motion to alter or amend, where he made the same assertion. By failing to include an adequate record on appeal, James has failed to show the district court erred.

2.      James' request for maintenance

The district court found that neither party requested, nor received, temporary maintenance during the 2 1/2 years when this action had been pending. And it found that the parties have agreed that neither party shall pay maintenance to the other party. James argues these statements are "flagrant untruths," citing his requests for maintenance in his answer and counterpetition for divorce filed February 2017, a pro se motion for maintenance filed January 2019, and another motion filed March 2019.

The district court was correct that for two years while the action was pending, James did not request temporary maintenance. James did not state he wanted "temporary" maintenance in his counterpetition for divorce filed in February 2017. James admitted so in a later filing.

It is true that in a motion dated January 2019, James asked for maintenance payments to begin "as soon as possible" due to his financial condition. The district court considered and rejected James' motion for temporary maintenance at a hearing on March

4, 2019. The parties then reached their settlement agreement on March 12, 2019, which did not require either party to pay maintenance.

It was described as a "walk away" settlement. Later, in a motion dated March 18, 2019, James requested "temporary" maintenance. The district court considered and rejected that motion at a hearing on May 16, 2019. Those transcripts are not in the record.

A court may award either party maintenance "in an amount the court finds to be fair, just and equitable under all of the circumstances." K.S.A. 2020 Supp. 23-2902(a). Maintenance provides for the future support of a divorced spouse. In deciding whether to award maintenance, the court may consider:

- the age of the parties;
- their present and prospective earning capacities;
- the parties' needs;
- the time, source, and manner of acquisition of property;
- family ties and obligations; and
- the parties' overall financial situation.

See K.S.A. 2020 Supp. 23-2802(c).

The amount of maintenance depends on the needs of the party requesting it and the ability of the other party to pay support. But there are no fixed rules in determining a maintenance award. *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 713.

The district court made extensive findings and found an award of maintenance to either party was inappropriate. The court found each party could generate sufficient income to meet their ongoing needs due to their education, experience, and qualifications. The court found that James:

- was 69 years old;

8

- was the former President and CEO of Dadson Manufacturing Corporation;

- was highly educated, having received multiple engineering degrees, including a PhD in engineering management;

- was a licensed professional engineer in Kansas and Missouri;

- had authored six books;

- had generated significant income in consulting and speaking; and

- had a continuing ownership interest in the company EMCI.

James admits that he provided the "vast majority" of his and Pamela's income during the 45-year marriage, which supports the district court's factual findings. And he cites no evidence in the record to support his assertions about the "tremendous economic disparity" he perceives between him and Pamela. James has not shown the court's denial of maintenance was error.

3. Value of the homes

The parties agreed Pamela would get the Rosewood home and James would get the Sagebrush home. James argues about the values attributed by the court to both homes. He contends the court should have used the 2019 value of the Rosewood home because it had increased in value since the divorce petition was filed. He asserts that the court actually used the value of the home from 2008—nine years before the filing date. And he asserts the court wrongly found the Rosewood home was a gift to Pamela from her parents in 2008. He also argues the court should have valued necessary repairs, interest, taxes, and maintenance on the Sagebrush home as it did for the Rosewood home.

James mischaracterizes the district court's ruling. The court did not use 2008 as the valuation date for the Rosewood home. Instead, it used the valuation date it had set out for all of their property—the divorce filing date in 2017. In rejecting James' proposal to

9

use the 2019 value of the home, the court did recognize that it could legally use the value of the Rosewood home when Pamela received it as a gift from her parents in 2008. But that would decrease the value in Pamela's favor. The court also recognized that the home needed repairs, which Pamela had submitted proof of at the hearing. Thus, the court decided not to use the 2019 value. The court used the 2017 value.

The court treated the Sagebrush property the same way and used the 2017 value for it (minus 7 percent for cost of sale and the existing mortgage). Neither value the court used was reduced for repairs. James' argument lacks merit.

4.     Earlier separation of marital assets

James contends the court incorrectly found that the parties had "substantially separated their marital assets in 2011." He asserts that this was wrong and cites bank statements from a joint checking account he held with his girlfriend in 2015, among other documents.

James again mischaracterizes what the district court said, which was merely a recitation of the parties' arguments:

> "The settlement agreement reached between the parties did not require either party to provide the other party with maintenance. The parties have been living apart since on or before the date of filing, and have been separately handling their own finances. *Wife contends that the parties substantially separated their marital assets in 2011, although Husband contends that some finances continued to be shared up to the time the divorce was filed.*" (Emphasis added.)

Thus, this was Pamela's contention and not a finding of the court.

10

5.    Earlier separation of living arrangements

James argues the court falsely stated that he and Pamela had separated before January 2017 and that Pamela was living at the Rosewood home while he was living at the Sagebrush home.

James fails to cite to any evidence in the record that would contradict the court's findings, nor does he explain why it matters. Thus, we will disregard his contention.

6.    James' ownership interest in EMCI

James disputes the court's finding that he had retained an ownership interest in EMCI. He claims he "was forced to give up all of his interests in EMCI, which the court would have known had it held its promised hearing (and trial)."

The district court did hold an evidentiary hearing on June 6, 2019, to determine whether the settlement agreement was just and equitable. James had the opportunity to present evidence about the value of his assets and debts. He has not shown that the court "promised" another evidentiary hearing on this issue. When the court found the settlement agreement was just and equitable, no further hearing was required. The court only needed to provide its ruling at that point. If the court had found the settlement unjust or inequitable, then the court could have set another hearing or trial on the matter.

7.    Initial asset list submitted by Pamela

James challenges the initial asset list submitted by Pamela in March 2019. That was a preliminary list and not what the court ultimately used to determine whether the parties' settlement was just and equitable. The court held a hearing where it heard from

11

the parties and took evidence. And James had over two years after the divorce petition was filed to create his own list. James' argument lacks merit.

8.      Value of James' businesses

James contends the district court's valuation of his two businesses was "fanciful and unreasonable" because the court "replaced financial information developed and controlled by a professional accounting firm" with "the court's own unsupported musings about their value" and the testimony of "a known thief."

James' only evidence on the value of the two businesses—Luman, and Epic—were one- and two-page balance sheets he provided to the court. Both contained line items representing significant losses. Luman's balance sheet contained a $395,437.85 liability on one line. Epic's balance sheet contained a $247,628.72 liability on one line. The district court noted that no evidence was presented to explain how the numbers on the balance sheets were arrived upon. Yet James claimed over $610,000 in business debt on the parties' marital asset/debt spreadsheet.

According to an affidavit from Peter Lucas, the President of Dadson and the parties' son, the $395,437.85 on Luman's balance sheet and the $247,628.72 amount on Epic's balance sheet were amounts Luman and Epic owed to Dadson. But Dadson had written both amounts off as bad debt. The district court found that neither Luman nor Epic was obliged to satisfy the debts. Thus, the court did not give James credit for the business debt. The court also questioned James' credibility, stating that each company likely had a positive value.

It is not clear the district court made "unsupported musings." The court did state that both companies "likely" had a positive value. It is unclear if that was speculation or an inference based on testimony presented at the evidentiary hearing. James did not

12

include a transcript of that hearing in the record on appeal. The court was knowledgeable about the businesses. It is clear the court did not believe James. In any event, the court did not give James credit for any business debt because of Peter's affidavit stating that neither company was still obligated to satisfy that debt. James has not shown that was error. This court does not reweigh evidence. See *In re Marriage of Kuzanek*, 279 Kan. 156, 160, 105 P.3d 1253 (2005).

James refers to his son, Peter, as "a known thief." That assertion is not supported by this record. He seems to be referring to the Dadson litigation. But in that case, a judgment was entered against James, not Peter, for conversion of funds.

After examining James' arguments on these points, we find that none of them compel us to reverse. Assertions made without factual support are never persuasive. They are just words.

*The valuation date setting was not an abuse of discretion.*

James contends the district court arbitrarily set the valuation date in March 2019. He also argues that the court misstated in its journal entry that he had agreed to a valuation date of January 3, 2017. He argues a 2019 valuation date would have given a clearer picture of the financial condition of the parties. He also makes some factual claims for the parties' financial condition without citing to support in the record.

A district court has options for setting a valuation date under K.S.A. 2020 Supp. 23-2802(b):

> "Upon request, the trial court shall set a valuation date to be used for all assets at trial, which may be the date of separation, filing or trial as the facts and circumstances of the

13

case may dictate. The trial court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property."

The selection of a valuation date for marital assets is discretionary with the district court based on the facts and circumstances of the case. The court can consider when the financial involvement between the parties ended in determining the date. *In re Marriage of Cray*, 254 Kan. 376, 387-88, 867 P.2d 291 (1994). But the court is not required to ignore things that happen after the valuation date. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261-62, 452 P.3d 392 (2019).

Here, we see no abuse of discretion. The statute says the district court will determine the valuation date "upon request." Pamela did not move to determine a valuation date until February 18, 2019. Then the court held a hearing and set the date. The district court did not act arbitrarily in waiting for a motion to make its ruling. After all, it did not have to set a date until there was a request to do so.

James cites no evidence of financial involvement between the parties after the date the petition was filed. The court set the valuation date after hearing from the parties. And the court found the parties had agreed on the valuation date. James has not included a transcript of the hearing in the record on appeal. He has not shown the court erred.

James also contends the district court selectively used the valuation date to benefit Pamela. He claims Dadson's write-off of his businesses' losses occurred months or years after the valuation date. He also complains about the court's:
- consideration of repairs needed in the Rosewood home;
- inclusion of Pamela's legal fees from the Dadson case in its analysis because those fees were incurred after the valuation date; and
- analysis of the fact that both parties took out home equity loans on the Rosewood home after the filing date.

14

Again, James does not cite to evidence showing *when* Dadson's write-off of his businesses' losses occurred. According to the district court, Peter's affidavit explained that the business losses represented on Lumen's and EMCI's balance sheets had been "previously" written off by Dadson as bad debt. The court did not specify when the debt was written off. The district court had the affidavit and heard testimony.

This court lacks a sufficient record to review James' claim. Even if the write-off occurred after the filing date, the district court did not have to ignore the write-off because the amount of money involved was significant.

As discussed above, the court did not factor repairs into either home's value.

The district court treated Pamela's legal fees in the Dadson case as a dissipation of marital assets. We will address that question in the next issue.

James calls the district court biased and makes several factual allegations about a home equity line of credit without citing any support in the record. The court explained that it valued the withdrawal from the line of credit by James, but not the withdrawal by Pamela because she would be solely obliged to satisfy that debt once the parties were divorced. After all, she was getting the Rosewood home and all its associated debts. James has shown no error in this analysis.

With no support in the record, we are unpersuaded by James' arguments.

*Pamela's legal fees from James' business lawsuit*

James contends the district court arbitrarily declared Pamela's legal fees in the Dadson case a dissipation of marital assets in this case. He contends that because the settlement agreement was a complete walk-away agreement, the district court could not

consider Pamela's debts in determining whether the settlement agreement was just and equitable.

The court categorized Pamela's legal fees as a dissipation of marital assets because James' claims against Pamela in the Dadson case lacked merit and her inclusion in the lawsuit offered no benefit to James while creating significant debt for Pamela. In deciding the just and equitable division of marital property, a court can consider the dissipation of marital assets. K.S.A. 2020 Supp. 23-2802(c). "Dissipate" means to destroy, waste, or expend funds foolishly. The district court has wide discretion to consider whether marital assets were lost because of the wrongful conduct of one of the parties to the marriage. *In re Marriage of Rodriguez*, 266 Kan. 347, 352, 969 P.2d 880 (1998).

The court was not assessing those fees here. The task of the district court was to add up the assets and debts each party would be left with after the walk-away settlement. The court had to determine whether that settlement was fair. Pamela would be left with about $50,000 in legal fees defending the claims James had made against her in the Dadson case. The court did not order James to pay Pamela that amount. The court considered that amount in determining if the settlement was fair. James even admits that the $50,000 in legal fees was "a foolish and unnecessary expenditure of marital funds" even though he brought her into that lawsuit.

James has not offered us any legal arguments that show this was an error by the court.

*Omission of crucial facts by the court*

James contends the district court omitted these crucial facts from its analysis:
- James was destitute;

16

- Peter (not James) stole from Dadson;
- Pamela withdrew $45,000 from the line of credit to fund Dadson's attorney in the litigation against him;
- he was the one who managed the parties' financial affairs for nearly 45 years;
- Pamela had a federal employees retirement pension;
- Pamela had offered to give James the 2002 Camaro;
- his health savings account was not just another bank account; and
- Pamela committed perjury.

Again, James has cited no support in the record for the "facts" he alleges.

The court did address Pamela's retirement annuity. The court did not include the roughly $6,000 in its assessment. Her retirement benefit would not be enough to change the outcome of the court's assessment of the parties' assets and liabilities. The court also did not include James' social security earnings.

The court did address James' accusation that Pamela committed perjury. The court found no perjury, lies, or misrepresentations by Pamela. Rather, the court found James' "assertions of falsehoods by others to be consistent with a pattern of meritless allegations that he has advanced against others throughout these proceedings." The court then sanctioned James.

James has not included a transcript of this hearing in the record on appeal. This record supports the district court's findings.

In summary then, the district court, in a carefully drafted journal entry, found that the parties' settlement agreement was just and equitable. James offers us no factual

support for his opinions to the contrary. We remain unpersuaded by his complaints because he has shown us no abuse of discretion by the district court.

Affirmed.