NOT DESIGNATED FOR PUBLICATION2091

No. 122,211

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
MARLOUISE CLARK WOOD,
*Appellee*,

and

STEVEN PAUL WOOD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; LINDA KIRBY, judge. Opinion filed November 13, 2020. Affirmed.

*Michael L. Leyba*, of Stange Law Firm, of Wichita, for appellant.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., MALONE, J., and WALKER, S.J.

PER CURIAM: Steven Paul Wood appeals the district court's order granting Marlouise Clark Wood's divorce petition and dividing their marital property from their 41 years of marriage. Steven argues first that the district court abused its discretion by ignoring a Sedgwick County local court rule that requires a pretrial conference and a pretrial conference order before the trial. Steven also argues the district court erred in its ruling by (1) setting an incorrect valuation date for some of the assets, and (2) characterizing his spending activity after their separation as dissipation of the marital estate. After reviewing the arguments presented, we affirm the property division ruling.

1

Marlouise filed for divorce from her husband Steven in April 2017 after 41 years of marriage because of incompatibility. In the petition, she requested spousal support and for an equitable division of "the property and obligations of the parties." The petition did not list a date of separation. Marlouise also indicated no retirement benefits or related accounts on her domestic relations affidavit (DRA). Along with her petition she filed a poverty affidavit in support of her request to waive the docket fee because she was retired, and her only source of income was a monthly Social Security benefit.

The next day, the district court issued an order allowing the case to be filed without paying a docket fee but reserving final judgment until either the fee had been paid or a review hearing was conducted on the information obtained in the DRA. Likewise, the court issued a temporary order allowing Marlouise exclusive possession of their residence and setting a hearing date for Steven to voice any objections to the temporary order or request modifications to it.

Three months later, Marlouise filed an amended petition with the only change being a request for retirement benefits. The court issued an amended temporary order and notified Steven that Marlouise's counsel would be requesting a business records subpoena for production of documents related to any retirement accounts. Steven timely answered the amended petition, admitting the allegations of fact and likewise requesting an equitable division of property and debt.

In April 2018, Marlouise paid the filing fee and the district court scheduled a pretrial hearing for June 2018. That hearing was continued several times, until eventually the parties submitted a pretrial conference order in July 2018. The court promptly scheduled a settlement conference for August 2018 and an evidentiary hearing for

September 2018. The evidentiary hearing was continued several more times until March 2019.

About a week before the evidentiary hearing, Marlouise submitted an amended DRA with slightly updated income and debt information. Her DRA showed monthly income of $1,356, monthly expenses and debts of $1,771.47, leaving her with a monthly net balance of -$415.47. As for owned assets, she listed a Buick Rendezvous with a value of $3,000 and various items of houseware with no specified monetary value.

Steven also submitted his DRA a few days later, which reflected that they had "separated in 2008." Steven's DRA showed a monthly income of $3,347, monthly expenses and debts of $2,964, leaving him with a monthly net balance of $383. He also listed several assets, including:  Fidelity IRA worth $993; 2013 Dodge Ram worth $13,845; 2008 Big Dog motorcycle worth $1,000; 1972 Ford Mustang worth $300; and 1939 Ford Pickup worth $200.

At the evidentiary hearing, the parties gave conflicting testimony on several points. Marlouise testified that they married in 1976 and separated in 2008. Steven at first agreed that the separation occurred when he retired in September 2008, but then later testified that he believed they really separated in 2005. At that time, Marlouise had gone to live with their daughter to help take care of a premature-born granddaughter. According to Steven, Marlouise "had no intent when she left in 2005 of ever returning as [his] wife."

The parties agreed that Steven began giving Marlouise $350 monthly after their separation but disagreed about the duration of the payments. Marlouise said the payments began around 2009 or 2010, which continued "[p]robably up until 2015 [or] 2016" when she bought her Buick Rendezvous. In contrast, Steven said that he began giving her the monthly payments the first or second month after he retired in September 2008 but

3

testified inconsistently as to the final payment date. He said he stopped paying her after his 10-year fixed pension from Cessna ended in 2017, but also believed the payments stopped when his girlfriend's mother passed away but could not recall when exactly.

The parties also disagreed about how the district court should value and distribute Steven's Textron 401(k) account. They did not dispute that it was worth around $133,000 when Steven retired in 2008 and only contained around $1,000 as of the evidentiary hearing. Steven testified that once he retired, he began taking money out for many reasons, including:

- Giving their son an unspecified amount of money to help him move back home from the East Coast after losing a job; $3,000 for bail; and $5,000 to pay for an attorney. He also gave their daughter money a few times but did not specify a total amount.
- Paying off a $24,000 mortgage for a home they had owned, as well as unspecified amounts for medical bills and "about $9,000 worth of hot checks" Marlouise had allegedly written during their marriage.
- Spending around $12,000 on a single-car garage and carport on the property where he was still currently living.
- Purchasing a Big Dog motorcycle for $28,000 in 2008 that he now asserted was "pretty much junk" because it no longer ran, and the manufacturer went bankrupt.

Steven testified repeatedly that he had no receipts for most of these transactions but agreed that the account had around $35,000 remaining on December 31, 2008. Marlouise testified that she did not know about the 401(k) when she first filed the divorce petition and believed she was entitled to half of the amount that remained when they separated in 2008. Likewise, Marlouise did not know how much money Steven had given their children.

After considering the evidence presented by the parties, the district court took the matter under advisement. Several months later, the court issued its final journal entry of judgment and decree of divorce.

In the ruling, the court found that the parties' testimony supported a finding that Steven's "concealment and dissipation of marital assets," his failure "to pay adequate spousal maintenance for over 10 years, and other factors," warranted an equal 50/50 division "valued from the date of separation in 2008." The court set forth the following distribution of marital assets:

- Marlouise was entitled to a total equitable share of $33,725.40 for the amount remaining in the 401(k) after the parties separated in 2008, ordering the $987 currently remaining in the account to be paid upon judgment.
  - For the September 29, 2008 withdrawals from the 401(k) totaling $110,267.26, Marlouise was entitled to a net amount of $21,606.90. The court assigned an equal distribution of the taxes paid to withdraw the funds, amounts paid toward marital debts, and gifts made to their son of which Marlouise did not object. However, the court subtracted from Steven's share the amounts paid for the Big Dog motorcycle and the real property improvements that only benefitted Steven, as well as the gifts to their son of which Marlouise was not aware, treating these as dissipations of the marital property.
  - For the remaining $35,702.75 of the 401(k), a loan amount of $5,406.48 was treated as marital debt and subtracted for a remainder of $30,296.27 in the 401(k) in December 2008 that was marital property. The court reduced this amount by 20% for taxes, leaving Marlouise entitled to an additional $12,118.50 as her equitable share of the remaining funds in the 401(k).

5

- Marlouise was entitled to a total equitable share of $63,534.50 for the amount of the Cessna pensions Steven received during the 10 years after their separation in 2008. That judgment would be satisfied with monthly payments of $717.34 from Steven's Cessna pension from April 2019 to May 2029.
    - The court treated both pensions as marital property and used "the date of separation requested by Respondent" to calculate the total amounts of the pensions as $211,069. The court also found that "[h]ad the Cessna pensions been revealed to Petitioner and divided equally between the parties, over the last 10 years, Petitioner would have had total accumulated income of $105,524.50." The court then reduced that amount by $42,000, giving Steven "full credit" for 10 years of monthly $350 payments that he had testified to.
- Marlouise was entitled to half of Steven's remaining Cessna pension "in the amount of $1,041.52 (or $897.40 in [the] event the smaller Cessna pension is a 10 year certain annuity)."
- The parties were entitled to their own personal property as in their respective DRA, with a few exceptions. The court awarded the Big Dog motorcycle to Marlouise for the estimated value of $1,000 "as partial equalization of marital property." In addition, the court awarded "[a]ll other vehicles not awarded above" to Marlouise "if she so chooses," and ordered that the judgment related to the 401(k) would be reduced by those values if Marlouise chose to claim the vehicles. Ultimately, Marlouise decided to exert a claim as to the 2007/08 Big Dog Motorcycle valued at $1,000; the 1969/72 Ford Mustang valued at $300; and the 1939 Ford Pickup valued at $200, and so the judgment related to the 401(k) was reduced to $32,225.40. Steven would retain the 1986 Dodge Ram Charger and the GMC Jimmy valued at $500 each.

6

- The court denied Marlouise's request for spousal maintenance, finding that since the order entitled her to receive one-half of Steven's Cessna pensions going forward, the judgment "will assure that her current total need as shown on her domestic relations affidavit will be met."

Steven timely appealed.

ANALYSIS

*The district court did not abuse its discretion by failing to conduct a pretrial conference.*

Steven argues first that the district court abused its discretion when it failed to conduct a pretrial conference, which he asserts was required under a Sedgwick County local court rule. As a result, Steven asserts that the court's property distribution ruling must be reversed because a pretrial conference was necessary for the court to establish a valuation date to determine the value of the marital assets.

In response, Marlouise contends Steven's argument must fail for four reasons: (1) he is raising the issue for the first time on appeal; (2) the procedural requirement was satisfied because the parties previously submitted a proposed pretrial conference order that was "inadvertently never formally filed"; (3) the separation or valuation date could be set either at a pretrial conference or at trial; and (4) he demonstrated no resulting prejudice from the alleged lack of a pretrial conference or accompanying order.

In a reply brief, Steven challenges whether Marlouise followed the procedure for adding the proposed pretrial conference order to the record on appeal. In short, he argues that any such order was never properly made a part of the record and thus should not be considered by this court.

7

*Our standard of review is abuse of discretion.*

We review the district court's alleged failure to conduct a pretrial conference for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). As the appellant, Steven bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

But also to the extent that resolving whether the court needed to hold a pretrial conference or failed to do so requires interpretation of a statute or court rule, that presents a question of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

*Discussion*

Under K.S.A. 2019 Supp. 20-342 and Supreme Court Rule 105 (2020 Kan. S. Ct. R. 164), district courts may enact rules necessary for their administration and that are consistent with applicable statutes and Supreme Court Rules. With respect to pretrial conferences in a divorce action, a district court need only conduct a pretrial conference "upon request of either party or on the court's own motion." K.S.A. 2019 Supp. 23-2709; see also K.S.A. 2019 Supp. 60-216 (governing pretrial conference procedures). The list of matters to be discussed at a pretrial conference can include:

"(A) Simplifying the issues;

"(B) determining the issues of law that may eliminate or affect the trial of issues of fact;

"(C) amending the pleadings if necessary or desirable;

"(D) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof;

"(E) limiting the number of expert witnesses;

"(F) referring issues to a master; and

"(G) such other matters as may aid in the disposition of the action, including alternative dispute resolution." K.S.A. 2019 Supp. 60-216(c)(2).

After holding a pretrial conference, a district court "should" issue an order reciting the actions taken on those matters. K.S.A. 2019 Supp. 60-216(d). Generally, a pretrial conference order supersedes any pleadings and controls the subsequent course of action unless modified by the court to prevent a manifest injustice. K.S.A. 2019 Supp. 60-216(d), (e); *Nelson v. Nelson*, 38 Kan. App. 2d 64, 75, 162 P.3d 43 (2007).

But Sedgwick County enacted its own local rules, which appear to make this process mandatory. First, the local rules provide that "[n]o case shall proceed to trial without a Pre-Trial Conference being held, and a Pre-trial Conference Order being filed. These conferences shall be held Mondays at 8:45 a.m. with the Assigned Family Law judge," but also that "[n]o Pre-Trial Conference shall be held sooner than 60 days after the filing of the petition in the case, except by agreement of the parties or for good cause shown." Sedgwick County Local Court Family Law Rule 411(b), (g).

If the parties have submitted an agreed-upon pretrial conference order on or before the date of the scheduled conference, their presence is not required unless by notification from the court. Local Rule 411(c). If no agreed-upon order has been filed, the parties are required to attend the pretrial conference and the court may order a sanction for unexcused absences. In addition, "[i]f only one party appears on the date of the conference and that party has prepared its version of the Pre-Trial or Pre-Hearing Conference Order, that version shall become the order of the Court, until further order of the Court." Local Rule 411(f). Under subsection (e),

"Any Pre-Trial conference order must include a) all information required by law and local rules, b) the date of the settlement conference, and c) the date of the trial. An initial

9

list of witnesses, exhibits, and issues/contentions must be included. Witnesses and exhibits may be amended up to 10 days before trial. In any case where property division is an issue, the parties must include an initial list of proposed division of debts and assets. The list of property to be divided may be updated at will up to 10 days prior to trial. The proposed values and division of property may be updated until the time of trial." Local Rule 411(e).

Similarly, Sedgwick County Local Court Family Law Rule 412(a) provides that "[n]o case can proceed to trial without a Mandatory Settlement Conference or a Judicial Settlement Conference being held, unless waived by the Court." The rule then reiterates that there must be a pretrial conference order on file before a mandatory or judicial settlement conference begins, "including a proposed division of assets and debts when property division is an issue." Local Rule 412(c), (f). Local Rule 412(f) also provides that "Mandatory Settlement Conferences shall be held approximately three weeks before the trial, on Mondays at 8:45 a.m." Then at the eventual trial, Sedgwick County Local Court Family Law Rule 414(c) provides that "[a]ll parties are limited by the issues, contentions, witnesses, and exhibits as listed in the final Pre-Trial Conference Order."

According to Steven, the district court violated these rules because the record lacks any documents to show that the court ever held a pretrial conference or issued a pretrial conference order. He mentions that there are only transcripts available from two hearings in the record, which consist of the evidentiary hearing in March 2019 and then a hearing in September 2019 on his then-counsel's motion to withdraw. Yet he acknowledges that Marlouise referenced a pretrial conference order as an exhibit stipulated by the parties at the trial and that the court mentioned the same in its later orders of divorce and division of property.

Further review of the record contradicts Steven's assertion about the lack of a pretrial conference or resulting order. The Register of Actions report shows that the district court held a pretrial conference on July 16, 2018, at which the hearing result

reflects two events occurred: (1) the filing of a "Civil Pretrial Conference Order," and (2) the scheduling of a "Mandatory Settlement Conference" to occur the next month. Steven does not address these entries in his appellate brief. Although there are no transcripts from the "hearing" to confirm either party's presence, it seems likely that the court complied with Local Rule 411(c) and did not require either party's attendance because they had submitted a joint pretrial conference order that day. That said, Steven's concerns that the record included no pretrial conference order when he submitted his brief are well taken.

But after submitting an initial brief, Marlouise apparently recognized that the record lacked a copy of the pretrial conference order submitted in July 2018, so she moved to add "Petitioner's Exhibit 1"—a copy of the order referenced at the trial—to the record on appeal under Supreme Court Rule 3.02(d) (2020 Kan. S. Ct. R. 19). About two weeks later, she sought leave to amend her brief with citations to the addition, noting that "[t]he requested additions to the record on appeal have been made." This court allowed the amended brief over Steven's objection.

Steven then filed a reply brief, challenging whether the exhibit was ever properly made part of the record mainly because it was "withdrawn" at the close of the trial. He also argued that Marlouise failed to follow the proper procedure for making an addition to the appellate record by failing to file the request with the appellate court or serve a copy of the request on the court reporter. Simply put, Steven's attempts to prevent the exhibit from being included in the record are unavailing.

To start, Supreme Court Rule 3.01(a) (2020 Kan. S. Ct. R. 19) says that the "entire record" includes "all original papers and exhibits filed in the district court." Under Supreme Court Rule 3.02(d)(3) (2020 Kan. S. Ct. R. 21), a party can request "any part of the entire record under Rule 3.01(a)" be added to an appellate record that "has not been transmitted to the clerk of the appellate courts" subject to these rules:

11

"(A)     The party requesting the addition must serve the request on the clerk of the district court and—if the requested addition is an exhibit that was offered or admitted into evidence and is in a court reporter's custody—on the reporter, who promptly must deliver the exhibit to the clerk of the district court for inclusion in the record on appeal.

"(B)     The clerk must add the requested addition to the record on appeal. No court order is required."

Subsection (d)(4) addresses additions to the record on appeal where the record "has been transmitted to the clerk of the appellate courts," and requires that "[a]n addition to the record on appeal may be made only on an order of the clerk of the appellate courts or an appellate justice or judge." Supreme Court Rule 3.02(d)(4) (2020 Kan. S. Ct. R. 21).

Here, the Clerk of the Appellate Court did not request the record from the district court until August 7, 2020, and it was received 10 days later. Marlouise requested her addition on May 20, 2020, so her request falls under Rule 3.02(d)(3) since the record had not been transmitted to the Clerk of the Appellate Court. See Supreme Court Rule 3.07(a) (2020 Kan. S. Ct. R. 25) (authorizing appellate clerk to request transmission upon expiration of time for filing briefs or any extensions and requiring compliance within seven days of receipt of the request). As a result, Steven's argument that Marlouise erred by not filing her request with this court fails because the record was not transmitted yet and thus Rule 3.02(d)(3) applied to her request.

Steven next argues that Marlouise failed to serve a copy of her request on the court reporter, as required by Rule 3.02(d)(3)(A). He notes that the exhibit was withdrawn at the end of the trial, thus meaning that the court reporter did not have custody of the exhibit anymore. That appears to be true here, since Marlouise's request conveyed that "[t]he requested addition is being uploaded separately as part of this filing." So it stands to reason that the document was not in the court reporter's custody because Marlouise

12

would not have needed to upload the document if the reporter already had access. Although Steven is correct that Rule 3.02(d)(3)(A) requires service of a request on the court reporter, a different rule seems to apply in this situation.

Under Supreme Court Rule 3.04(b) (2020 Kan. S. Ct. R. 23),

"[i]f an exhibit *offered*, admitted, or excluded *in a hearing or trial is unavailable*, a party to an appeal may prepare a photocopy or any facsimile that accurately duplicates the original exhibit. The substitute exhibit must be served on all parties, who may serve an objection or proposed amendment no later than 14 days after being served. The substitute exhibit and any objection or proposed amendment then must be submitted to the district court for settlement and approval. As settled and approved, the substitute exhibit must be included by the clerk of the district court in the record on appeal." (Emphases added.)

Steven asserts emphatically that adding the exhibit to the record on appeal "is tantamount to making something appear where it never existed before" because it was "never actually admitted into evidence." But Rule 3.02(d)(3)(A) indicates that exhibits *offered* at a previous hearing can be added to the record on appeal. See Supreme Court Rule 3.01(a) (2020 Kan. S. Ct. R. 19) ("The entire record consists of . . . all original papers and exhibits filed in the district court."). Moreover, he acknowledges that the parties stipulated to the exhibit's inclusion at the trial and did not object to its consideration by the court at that time.

Admittedly, whether the district court complied with Rule 3.04(b) and gave Steven 14 days to object or propose an amendment is unclear, because the electronic file stamps for Marlouise's request and the exhibit are exactly the same. But that would also make sense if Marlouise uploaded the exhibit at the same time as her request. Marlouise also certified that she sent a copy of the request to Steven's counsel—and presumably the attached exhibit—that same day. But she did not move to file her amended brief until two weeks later and at that time noted "[t]he requested additions to the record on appeal have

13

been made." The only indication of an objection came in the form of Steven's response to the request to file an amended brief on June 12, 2020, in which he raised the same challenges as in his reply brief—that the record had been transmitted and she had failed to file the request in the appellate court to have the exhibit added to the record. That leads to the primary reason why Steven's challenge must fail.

Generally, as Marlouise notes, issues not raised before the trial court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. Thereafter, the Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). In short, because Steven does not explain why he failed to object at any point during the underlying proceedings about the lack of a pretrial conference order being on file, that issue is deemed abandoned. Similarly, because he failed to assert any objections to the exhibit's addition to the record on appeal in the district court, Steven has waived that challenge.

For these reasons, we conclude that Marlouise followed the correct procedures outlined in the Supreme Court Rules for adding an exhibit to the record on appeal and that there was no abuse of discretion by the district court. For these reasons, we can consider the exhibit as proof that the district court complied with Sedgwick County local rules requiring that a pretrial conference order be on file before proceeding to trial.

14

*The district court did not err in dividing the parties' property.*

Steven also argues the district court erred when distributing the marital property in two critical ways: (1) by failing to set a specific valuation date for the marital property, and (2) by characterizing his spending activity after his retirement as "dissipation" under K.S.A. 2019 Supp. 23-2802(c)(8). In response, Marlouise contends that the district court had discretion to account for changes in value and the evidence supported a general valuation date of 2008. Marlouise also asserts that the court properly considered Steven's actions as dissipation of the marital estate.

*The district court's property division is reviewed for abuse of discretion.*

A district court's division of property in a divorce action is governed by K.S.A. 2019 Supp. 23-2801 et seq. A district court has broad discretion when adjusting the property rights of the parties involved in a divorce action. As a result, the district court's property division is reviewed for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow*, 308 Kan. at 893. As the appellant, Steven bears the burden of showing such abuse of discretion. *Gannon*, 305 Kan. at 868. To the extent that resolving this question requires interpretation of a statute, that presents a question of law subject to unlimited review. *Nauheim*, 309 Kan. at 149.

Steven challenges the district court's property division ruling in two ways. First, he argues that the court erred by not setting a precise valuation date and using inconsistent valuations for certain marital assets. Next, he argues that the court's characterization of his spending activity as "dissipation" conflicted with K.S.A. 2019 Supp. 23-2802(c)(8). These arguments will be addressed in turn.

15

*The district court did not abuse its discretion regarding its valuation determinations.*

Kansas law requires the district court to "set a valuation date to be used for all assets at trial" in divorce cases, at the request of either party. K.S.A. 2019 Supp. 23-2802(b). The statute allows the court to choose between "the date of separation, filing or trial as the facts and circumstances of the case may dictate." K.S.A. 2019 Supp. 23-2802(b). After setting the valuation date, "[t]he trial court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property." K.S.A. 2019 Supp. 23-2802(b).

On this point, Steven asserts that "disputes over the date of valuation of the marital assets are to [be] worked out in a pretrial conference." But our Supreme Court has long held:

> "The trial court has discretion to value the marital assets at the time of separation, at the time the divorce petition is filed, at the time of the divorce hearing, or as the facts in each case dictate. When the time of valuation becomes an issue in a contested case, the trial court at the pretrial conference should set the valuation date. In doing so, all the marital assets shall be valued as of the same date." *In re Marriage of Cray*, 254 Kan. 376, 387, 867 P.2d 291 (1994).

The court then concluded that substantial competent evidence supported the trial court's decision to use the date of separation as the appropriate valuation date. 254 Kan. at 388; see *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 509, 839 P.3d 541 (1992) (reviewing district court's valuation of marital property for substantial competent evidence). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

16

Steven now contends that the district court abused its discretion by (1) not setting out a valuation date in a pretrial conference order; (2) choosing a broad valuation date that was not supported by substantial evidence; and (3) valuing some of the marital assets using different dates.

*The district court did not abuse its discretion in failing to set a valuation date in the pretrial conference order.*

To start, as discussed above, Steven incorrectly asserts that the district court did not hold a pretrial conference and that there was no pretrial conference order. The parties submitted a pretrial conference order to the court in July 2018, which was later offered at the trial as a stipulated exhibit and then added to the record on appeal. The order indicated a valuation date of "07/31/2017"—which was the date Marlouise filed the amended petition—but that Steven requested a valuation date of "2008 when the parties separated." Under "ADDITIONAL CONTENTIONS," Steven asserted that "[t]he parties have been separated for the last ten years." Yet again, in his proposed division, Steven asserted that "[e]ach should pay any debts they have incurred since the[y] separated 10 years ago."

But the portion of *In re Marriage of Cray* Steven now relies on did not set out a mandatory requirement that a district court *must* set a valuation date at a pretrial conference. Rather, the relevant portion of *In re Marriage of Cray* held that "[w]hen the time of valuation *becomes an issue* in a contested case, the trial court at the pretrial conference *should* set the valuation date." (Emphases added.) 254 Kan. at 387. Until Steven's conflicting testimony at trial about the separation date, there did not appear to be any dispute about the correct valuation date. As Marlouise notes, the district court ultimately chose the valuation date Steven originally requested, so he cannot now complain of an error that he essentially invited.

17

Moreover, *In re Marriage of Cray* dealt with a prior version of the property division statute. Nothing in the current statute required the district court to set a valuation date at the pretrial conference, nor does Steven provide any other authority requiring the court to set a valuation date in a pretrial order. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (not supporting a point with pertinent authority or in the face of contrary authority is akin to failing to brief the issue). Doing so would go against K.S.A. 2019 Supp. 23-2802(b), which anticipates that parties could submit evidence at trial "regarding changes in value of various assets before and after the valuation date in making the division of property." As a result, Steven has failed to show the court abused its discretion by not choosing a valuation date in the pretrial conference order.

*The district court's chosen valuation date was supported by substantial evidence.*

Steven points out that there was conflicting testimony presented at the evidentiary hearing about the party's separation date and that the district court failed to establish a precise valuation date. The court ordered the valuation date "from the date of separation in 2008," but Steven contends that choosing the entire year of 2008 was "vague and indeterminate." But a review of the court's property division ruling reveals that the court treated the date of Steven's retirement as the separation date. In short, the district court seems to have used the exact valuation date Steven originally requested but that he now asserts should have been more specifically defined.

The main marital asset was Steven's Textron 401(k) retirement account, which the court valued at $133,513.06 on January 1, 2008. There were two withdrawals in September 2008 totaling $110,267.26, and only $35,702.75 remained in the account on December 31, 2008. The court noted that Marlouise testified that she did not know about this account until discovery in this divorce action, which the court found was uncontested and credible. As a result, the court determined she was entitled to half of the funds but

18

allocated some of the amounts paid toward marital debts from the account based on Steven's testimony. The court then divided the remaining amount on December 31 to the parties equally, applied a 20% reduction for taxes, and concluded that Marlouise was entitled to $33,725.40 from the account.

Next, the district court discussed Steven's Cessna pension accounts, which he began receiving upon his retirement. Steven testified that he received $324.23 per month from a 10-year certain annuity and $1,758.81 per month from his main pension account. He also testified that he began giving Marlouise $350 per month about two months after his retirement and continued doing so for the next 10 years. Based on these amounts, the court found that Steven had received $211,069 "in the 10 years that he testified that pensions were paid" and that Marlouise was entitled to half of this amount with a $42,000 reduction for the payments Steven testified he made to her, for a total of $63,534.50.

Steven also asserts that the district court should have chosen a valuation date of 2005, which is when he testified that he believed they separated. He even said that he considered filing for divorce in 2005 and consulted a lawyer at that time but ultimately chose not to file. According to Steven, if his retirement plan "were valued three years prior along with his other two pensions, the marital estate would be considerably less, considering [he] retired at a higher position than he had for most of his career." But the only evidence presented at trial was about the value of his retirement plan in 2008. The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013); Supreme Court Rule 6.02(a)(4). More importantly, Steven also never testified about a specific date he believed they separated in 2005, so his preferred separation date is supported by even less evidence than the date chosen by the court.

19

For these reasons, we conclude that the district court's chosen valuation date of the date the parties separated in 2008 was supported by substantial evidence. Although the court did not identify a particular date in its order, reasonable persons could agree that the evidence showed they separated when he retired in 2008 and that the property division ruling clearly treated Steven's retirement date as the valuation date. Therefore, Steven has failed to show that the district court abused its discretion.

*The district court did not abuse its discretion by valuing some of the marital assets based on present estimated values.*

Steven also challenges the district court's valuation of the vehicles, arguing that they were not based on 2008 valuations. Again, relying on *In re Marriage of Cray*, he contends that the court abused its discretion by assigning values to the vehicles based on their present worth as estimated by the parties. See 254 Kan. at 387 (noting that "all the marital assets should be valued as of the same date").

As Marlouise points out, the Legislature has since amended the statute governing division of marital property. The current statute provides that "[t]he trial court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property." K.S.A. 2019 Supp. 23-2802(b); see *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261-62, 452 P.3d 392 (2019) (finding no abuse of discretion where court treated loan taken out after valuation date as marital debt).

Similarly, we find no abuse of discretion by the district court in considering the changes in value to the vehicles after the valuation date, which was their date of separation. Although Steven testified that he bought the Big Dog motorcycle for $28,000 in 2008, his DRA assigned a current value of only $1,000. His testimony at the trial established that the motorcycle needed substantial repairs, which would be difficult

20

because the manufacturer had gone bankrupt and parts were difficult to obtain. As for the other vehicles, the court assigned values based on Steven's own estimates and testimony. No other evidence was presented to suggest the vehicles were worth more than Steven set out in his DRA or his testimony at trial. So just as with Steven's previous argument, this claim must fail because he has failed to designate a record sufficient to support his claim.

In sum, a reasonable person could agree with the district court's valuation determinations in this case. Steven has failed to establish that the court abused its discretion.

*The court did not abuse its discretion by treating Steven's spending activity as dissipation of the marital estate.*

Steven also challenges the district court's treatment of his spending activity after the parties' separation as "dissipation" under K.S.A. 2019 Supp. 23-2802(c)(8). He argues that the court gave that term a "unique and genuine significance that was both beyond the literal definition . . . and went against all rules of statutory construction." Marlouise responds that the court found Steven had wrongfully concealed the size of his retirement accounts and pension from her, thus falling within the "wide latitude" granted to district courts in dividing marital property.

Both parties cite *In re Marriage of Rodriguez*, 266 Kan. 347, 969 P.2d 880 (1998), as the controlling case for dissipation of assets in Kansas. After reviewing the definitions of dissipation as interpreted in other states, the Kansas Supreme Court held that the then-existing statute plainly and unambiguously gave a trial judge "wide latitude to divide marital property and this latitude provides the judge with discretion to consider whether marital assets were lost as a result of the wrongful conduct of one of the parties to the marriage." 266 Kan. at 352. The court noted:

21

"To 'dissipate' has a defined and accepted meaning. Black's Law Dictionary 473 (6th ed. 1990) defines dissipate as '[t]o destroy or waste, as to expend funds foolishly.' Webster's New Collegiate Dictionary 366 (9th ed. 1991) defines the term as 'a: to expend aimlessly or foolishly b: to use up esp. foolishly or heedlessly.'" 266 Kan. at 352.

The current property division statute remains largely unchanged from the previous version interpreted in *In re Marriage of Rodriguez*. This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). In fact, the updated dictionary definitions of "dissipate" and "dissipation" bolster the *In re Marriage of Rodriguez* holding. Black's Law Dictionary 595 (11th ed. 2019) defines "dissipation" as "[t]he use of an asset for an illegal or inequitable purpose, such as a spouse's use of community property for personal benefit when a divorce is imminent." Webster's New World College Dictionary 425 (5th ed. 2014) defines "dissipate" as "1: to break up and scatter; dispel; disperse 2: to drive completely away; make disappear 3 to waste or squander."

Here, the district court found that Steven had concealed "most of the marital assets" from Marlouise and "intentionally deprived [her] of substantial property to which she had a legal right." Specifically, the court found that Marlouise lacked sufficient information to validly consent to a $350 monthly spousal maintenance as a result of the concealment, and that Steven had withdrawn $110,267.26 of the $133,513.06 in the 401(k) shortly after his retirement. He then made purchases from the funds that benefitted him alone, including: $28,000 on a motorcycle and $13,100 on improvements at his brother's property, including building a single car garage and carport for himself and his girlfriend.

Despite Steven's insistence that the district court applied a "strict construction" of the term "dissipation," his own testimony shows that he concealed and later used the

22

funds from his retirement account for his personal benefit and Marlouise received substantially less than she was entitled for that marital asset. A reasonable person could agree with the court's conclusion that Steven's actions constituted dissipation based on his wrongful conduct, so the court did not abuse its discretion.

In sum, we find that the property division ruling was fair under Kansas law. Steven has not shown the district court abused its discretion or that no reasonable person would make a similar distribution based on the available evidence.

Affirmed.